UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

```
MICHAEL MONROE,               )
                              )
            Plaintiff         )
                              )
         v.                   )   Case No. 2:09 cv 411
                              )
SISTERS OF SAINT FRANCIS HEALTH )
SERVICES, INC. dba St. Margaret )
Mercy,                        )
                              )
            Defendant         )
```

OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 38] filed by the defendant, Sisters of Saint Francis Health Services, Inc., on January 13, 2012. For the reasons set forth below, the motion is **GRANTED.**

Background

The plaintiff, Michael Monroe, was employed by the defendant, St. Margaret Mercy, for approximately five years before he was terminated on April 7, 2008. At the time he was terminated, he was a Hoosier Assurance Plan (HAP) case manager. As a HAP case manager, Monroe was responsible for completing progress notes for each patient session. It was St. Margaret Mercy's policy for the progress notes to be completed the same day as the patient session. Monroe also was responsible for completing 90% of all reassessments of HAP patients every six months. A HAP

reassessment entailed documenting the basic condition of the patient, and it could be completed either by phone or in person. The hospital was required to conduct 180-day reassessments to maintain HAP funding from the state.

Monroe was diagnosed with cerebral palsy at birth and had multiple surgeries and a rod implanted in his leg. As a result, Monroe walked with a limp and experienced various symptoms. On December 5, 2007, Monroe slipped in St. Margaret Mercy's parking lot and was injured. Monroe went to the emergency room the next day, and he called the office supervisor, Wanda Hurt, to inform her that he had injured himself. He reported that he did not expect to be out long. The following Monday, Monroe remained unable to walk and called Linda Thompson, the Director of Behavioral Health, to tell her about his injury. Thompson told Monroe he should see his personal physician for his injury. Neither Thompson nor Hurt told Monroe to file a worker's compensation claim or instructed him to request FMLA leave at that time. On December 11, 2007, Monroe went into the office and signed an Employee Status Change form stating he would be on leave until December 17, 2007. The leave was approved retroactive to the first day he missed work, December 6, 2007.

St. Margaret Mercy sent its employees to Working Well for injuries covered by worker's compensation benefits. Monroe does

2

not recall whether he first went to Working Well to fill out his Worker's Compensation Worksheet on December 11 or 17.  Monroe does recall that he received treatment from Working Well on December 17, 2007.  Because Monroe was in pain, his leave was extended through December 26, 2007.

When Monroe returned from leave, he requested intermittent FMLA leave for physical therapy.  Monroe complains that Fidel Martinez, Manager of Psychiatric Therapy Services and Monroe's direct manager, instructed him not to schedule his physical therapy or doctor appointments during the day.  Monroe was permitted leave for physical therapy and doctor appointments on December 26 and 27, 2007, and January 4, 16, and 18, 2008.

Prior to his termination, Monroe received the highest marks on his performance reviews.  His reviews reflected excellence in a number of categories including progress notes.  Monroe never had been admonished for any deficiencies in preparing progress notes and conducting HAP reassessments prior to his leave.  Two weeks after Monroe returned from leave, he received a notice for unsatisfactory work performance.  The notice explained that there had been significant delays in HAP enrollment data being entered into the CSDS system and set forth future expectations that all HAP enrollments should be documented on the day of the patient's appointment, all documentation resulting from HAP enrollment

3

interviews should be provided to the OPBH supervisor by the end of the following business day for entry into the CSDS system, all 180 day reassessments should be completed on time, and all updates should be completed immediately as changes occurred with the patient.  The notice also warned Monroe about completing his 180 day reassessments on time.

Following this notice, Monroe engaged in a series of behaviors that violated St. Margaret Mercy's policies.  On January 23, 2008, a patient complained that Monroe told her to "get her fucking head out of her fucking ass."  Monroe did not receive any discipline as a result of the patient's complaint.  On January 25, 2008, Hurt encountered Monroe slouched in a patient chair in his office with his hood pulled over his head and his eyes closed.  Monroe and Hurt had a conversation, and then Hurt left the room.  Hurt returned to find Monroe in the same position. More than an hour later, Sharon Hughes, a non-supervisory employee, entered the room and found Monroe in the same position with his eyes closed.  Shortly after, Martinez entered the room and saw Monroe with his eyes closed and asked if he was sleeping. Martinez told Monroe that sleeping at work was a terminable offense and that he would investigate further.  St. Margaret Mercy's employee handbook states that "sleeping or appearing to be sleeping during work shift" is "considered serious enough to

4

warrant immediate discharge."  St. Margaret Mercy previously terminated three employees for sleeping or appearing to sleep at work.

Monroe did not work the weekend of January 26-27, 2008, and began a second leave of absence on January 28, 2008, after it was discovered that his hip was broken.  Monroe did not return to work until April 7, 2008.

During Monroe's second leave of absence, Donna Ruebensam filled in.  Hurt and Thompson testified at their depositions that Ruebensam reported to Hurt that Monroe's patient files were missing progress notes.  Ruebensam does not recall whether she reported that his files were missing progress notes.  St. Margaret Mercy conducted an investigation into the status of progress notes for all of the staff members in the Outpatient Behavioral Health Department because of the potential for a fraud claim by Medicaid.  Medicaid requires progress notes to support the billing for an appointment and may pursue fraud charges in the absence of such documentation.  Hurt and Hughes inspected Monroe's patient files.  The inspection was not overseen or verified by Martinez.  It was discovered that 299 patient progress notes were missing from Monroe's files dating back to November 22, 2006.  The audit also revealed that two other employees were not in 100% compliance, however, the employees

5

already had ended their employment with the hospital.  St. Margaret Mercy reimbursed Medicaid $10,000 for charges associated with the files missing progress notes.

Monroe returned to work on April 7, 2008, and received a notice of discharge.  Monroe's notice stated that he was termi-nated for "professional incompetence" and "sleeping or appearing to be sleeping during work shift."  The notice specifically stated that 299 progress notes were missing from Monroe's patient files and that Monroe completed only three HAP reassessments of 63 due by the end of January 2008.

Monroe filed a complaint with this court on December 11, 2009, alleging that St. Margaret Mercy interfered with his rights under the Family Medical Leave Act (FMLA), retaliated against him for taking FMLA leave, and retaliated against him for applying for worker's compensation.  St. Margaret Mercy now moves for summary judgment on all claims.

<u>Discussion</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kidwell v. Eisenhauer,* ___ F.3d ___, 2012 WL 1848084, *6

6

(7th Cir. May 22, 2012); *Stephens v. Erickson,* 569 F.3d 779, 786 (7th Cir. 2009).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786.  A fact is material if it is outcome determinative under applicable law.  There must be evidence on which the jury could reasonably find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).  However, summary judgment may be entered against the non-moving party if it is unable to "establish the existence of an essential element to [the party's case, and on which [that party] will bear the burden of proof at trial . . . ."  *Kidwell*, 2012 WL 184084 at *6 (*citing Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 662 (7th  Cir. 2011) (*quoting Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2548).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.  *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006).  Upon review, the court does not evaluate the weight of the evidence, judge the credibility of wit-

nesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (*citing **Anderson***, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also **Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durfling-***

*er,* 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

The Family Medical Leave Act, 29 U.S.C. §2612, states that "an eligible employee shall be entitled to a total of 12 work-weeks of leave any 12-month period for one or more of the follow-ing: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  An eligible employee is one who has been em-ployed for at least 12 months by an employer covered by the Act and has worked for at least 1,250 hours.  29 U.S.C. §2611.  When leave is foreseeable because of planned medical treatment, the employee must provide his employer with at least 30 days' notice of the date the leave is expected to begin.  If treatment re-quires leave to begin in less than 30 days, then the employee must provide notice as soon as practicable.  29 U.S.C. §2612(e)(2)(B).  Similarly, the employee is responsible to give his employer notice when feasible when leave is unexpected. *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 382 (7th Cir. 2003). The employee satisfies his duty to give notice "if the employer knows of the employee's need for leave; the employee need not

mention the statute or demand its benefits." ***Byrne***, 328 F.3d at 382.

The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]."  29 U.S.C. §2615(a)(1).  The FMLA also provides that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. §2615(a)(2).  Specifically, the employer may not discharge or discriminate in any manner against an employee who has filed a charge or instituted a proceeding under the Act, who has given information in connection with a proceeding under the Act, or who has testified in any proceeding relating to a right provided under the Act.  29 U.S.C. §2615(b). Interference and retaliation are separate claims under the FMLA.

Interference arises when an employer either refuses to allow FMLA leave or discourages an employee from taking leave to which he is entitled.  29 C.F.R. §825.220(b); ***Dean v. Wackenhut Corp.***, 2011 WL 610946, *3 (N.D. Ill. Dec. 7, 2011); ***Stallings v. Hussmann Corp.***, 447 F.3d 1041, 1050 (8th Cir. 2006).  An employer violates this provision when it takes some action to deter an employee from participating in an activity protected by the FMLA by interference or restraint, such as attaching negative conse-

10

quences to the exercise of protected rights.  **Stallings**, 477 F.3d
at 1050 (*citing* **Bachelder v. Am. W. Airlines, Inc.**, 259 F.3d
1112, 1124 (9th Cir. 2001)).  To establish a claim for interfer-
ence, the employee must show both that he was entitled to a
benefit under the FMLA and that his employer interfered with his
"substantive rights under the FMLA for a reason connected with
his FMLA leave."  **Stallings**, 477 F.3d at 1050.

An employer is not strictly liable for every discharge
during FMLA leave, and suspicious timing alone is insufficient to
establish a violation of the interference clause.  **Kidwell**, 2012
WL 1848084 at *8 (The reason is obvious: "[s]uspicious timing may
be just that — suspicious — and a suspicion is not enough to get
past a motion for summary judgment.")(*citing* **Loudermilk v. Best
Pallet Co.**, 636 F.3d 312, 315 (7th Cir. 2011) (citation omit-
ted)).  Rather, it must be established that the employer's reason
for dismissal was related to the FMLA leave.  Although the
employee does not need to prove intent, he must show by direct or
circumstantial evidence that the FMLA leave was a negative factor
considered by the employer when making the decision to terminate
the employee.

The Seventh Circuit also has recognized a cause of action
for retaliation under the FMLA.  **Kauffman v. Federal Express
Corp.**, 426 F.3d 880, 884 (7th Cir. 2005).  "[T]he difference is

11

that [a claim for retaliation] requires proof of discriminatory or retaliatory intent while [interference] requires only proof that the employer denied the employee his or her entitlements under the Act." *Kauffman*, 426 F.3d at 884.  The employee may establish retaliation by submitting direct proof of a discriminatory or retaliatory animus or with circumstantial evidence through the McDonnell-Douglas burden shifting analysis.  "Under the direct method, [Monroe] must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008)(citations omitted).  "Under the indirect method, an employee must establish a prima facie case by proving that he (1) engaged in a statutorily protected activity; (2) met his employer's legitimate expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Caskey*, 535 F.3d at 593.  After the employee establishes a prima facie case, the burden shifts to the employer to show a non-discriminatory reason for its action.  If the employer comes forth with a non-discriminatory reason for its action, the burden then shifts back to the employee to show that the reason

12

is a pretext for the true discriminatory reason.  *Caskey*, 535
F.3d at 593.

Monroe first alleges that St. Margaret Mercy interfered with
his rights under the FMLA.  It is undisputed that Monroe was
eligible for FMLA leave and that St. Margaret Mercy was an
employer covered under the FMLA.  The dispute arises over whether
St. Margaret Mercy refused or discouraged Monroe's exercise of
his rights under the FMLA.  Monroe points to several events in
support of his argument that St. Margaret Mercy interfered with
his rights under the FMLA, including: (1) St. Margaret Mercy did
not advise him of his FMLA rights; (2) St. Margaret Mercy dis-
couraged him from attending physical therapy; (3) St. Margaret
Mercy held him to the requirements of a full-time fully func-
tional employee; (4) St. Margaret Mercy required Monroe to attend
an off-site seminar; and (5) the terms and conditions of his
employment were not the same after he was reinstated.

Monroe first complains that St. Margaret Mercy did not
advise him of his rights under the FMLA.  St. Margaret Mercy has
responded that Monroe requested leave four days after his fall
and that he was approved for retroactive leave dating back to
December 6, 2007, the first day he was absent as a result of his
injury.  The employer has a duty under the FMLA to provide its
employees with information about their rights and obligations.

13

29 C.F.R. §825.301; *Schober v. SMC Pneumatics*, *Inc.*, 2000 WL
1911684, *5 (S.D. Ind. Dec. 4, 2000).  Once an employer has
knowledge that an employee intends to exercise his right to
leave, the employer must give written notice of the employee's
FMLA rights and obligations.  *Schober*, 2000 WL 1911684 at *6.
The employee need not expressly assert his right under the FMLA,
rather, he simply must inform the employer of qualifying reason
for leave.  29 C.F.R. §825.301(b).  After the employee has stated
a qualifying reason, the employer "is responsible in all circum-
stances for designating leave as FMLA-qualifying, and for giving
notice of the designation to the employee". 29 C.F.R.
§825.300(d)(1).  The employer has five business days after it has
enough information to determine whether the reason for leave
qualifies under the FMLA and to notify the employee that leave
will be designated as FMLA leave.  29 C.F.R. §825.300(d)(1).  An
employer violates this duty and interferes with the employee's
rights under the FMLA if it gives misinformation about the
employee's FMLA rights and obligations or fails to give the
employee any information at all.  *Schober,* 2000 WL 1911684 at *6.

The record is not entirely clear on how the events tran-
spired leading up to Monroe's retroactive application for FMLA
leave.  However, the parties agree that Monroe was granted FMLA
leave, which applied retroactively, within five days of his

14

incident.  St. Margaret Mercy was entitled to take five days to render this decision.  Monroe cannot argue that his rights were interfered with because he was not immediately informed about his rights under the FMLA.  The employer is entitled to gather information to determine whether the request for leave qualifies under the FMLA.  In fact, when Monroe first informed St. Margaret Mercy of his injury and request for leave, he informed St. Margaret Mercy that he was in the emergency room, that he did not expect to be out long, and that he believed he may have sprained something.  The FMLA is intended to cover leave only for serious health conditions.  29 U.S.C. §2612.  By Monroe's own testimony, he did not give the appropriate notice to his employer on the date of his incident to trigger the protection of the FMLA.  St. Margaret Mercy acted promptly upon learning that Monroe had an FMLA qualifying injury and executed the requisite FMLA documents within the five days provided by the federal regulations.  There-fore, St. Margaret Mercy did not interfere with Monroe's rights by failing to inform him of the FMLA on the date of his injury.

Monroe next complains that his uncharacteristic behavior of sleeping at work should have constituted notice of his need for FMLA leave, citing *Byrne*, 328 F.3d at 382, in support of his argument that the employer has notice of the need for FMLA leave when an employee begins to act in an uncharacteristic manner.  In

15

*Byrne*, the plaintiff, who had been an excellent employee, began sleeping on the job and later informed his employer he did not feel well.  The plaintiff ultimately was terminated for sleeping at work and not attending a meeting.  *Byrne*, 328 F.3d at 380.  It later was discovered that he had severe depression.  The court determined that a person with major depression could not have requested leave.  The court went on to explain that the FMLA requires notice except "in extraordinary circumstances when such notice is not feasible."  The court concluded that notice was not feasible in this circumstance because the plaintiff was unable to provide notice and notice was "unnecessary even if the change in behavior was not enough to alert Avon to a need for medical leave."  *Byrne*, 328 F.3d at 382.

Monroe's condition is distinguishable from Byrne's.  Nothing in the record suggests that Monroe was unable to request leave and could not have given his employer notice.  Monroe was not suffering from depression or a mental impairment that could have interfered with his ability to notify St. Margaret Mercy that he needed FMLA leave.  In fact, Monroe previously gave St. Margaret Mercy notice of his first need for FMLA leave.  Under the circumstances, it was feasible for Monroe to give notice, and he has not pointed to any exceptional circumstances waiving this requirement.  If the court were to find that the employee is not

16

required to give notice when he is capable, this essentially would extinguish the notice provision of the FMLA.  The employer should not be required to speculate when an employee may need leave and to inquire into every uncharacteristic behavior of an employee.  This would place a significant burden on the employer.  Rather, capable employees must provide notice to their employers, which Monroe failed to do.

Monroe also complains that St. Margaret Mercy chastised and discouraged him from attending physical therapy during the work day.  However, Monroe can point to only one conversation where Martinez instructed him not to schedule his physical therapy sessions during the day.  "If an employee needs leave intermittently or on a reduced leave schedule for planned medical treatment, then the employee must make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations." 29 C.F.R. §825.203.  Therefore, it was in St. Margaret Mercy's right to request that Monroe schedule his physical therapy sessions outside of working hours, and the single request not to schedule physical therapy during the workday does not constitute interference.  Monroe never was denied leave to attend physical therapy or threatened with adverse employment actions.

Monroe also alleges that St. Margaret Mercy held him to the standards of a full time employee and should have adjusted its

17

performance expectations because he was not feeling "100%".
Although accommodation of a health condition may be requested
under the American's with Disabilities Act, 42 U.S.C.
§12112(b)(5)(A), an employer is not required to make reasonable
accommodations for an employee's health condition under the FMLA.
29 C.F.R. §825.702(a).  "The purpose of the FMLA is to make leave
available to eligible employees and employers within its cover-
age, and not to limit already existing rights and protection."
29 C.F.R. §825.702.  Under the FMLA, an employee can request a
reduced schedule and will be held to the requirements of a part-
time employee, but the FMLA does not provide for decreased
expectations for a full-time employee who returns to work.  *Har-
rell v. U.S. Postal Service*, 445 F.3d 913, 919 (7th Cir. 2006).
The employee must be capable of fulfilling his position or that
of an equivalent position upon return.  *Harrell*, 445 F.3d at 919.

Monroe returned to work full-time after his first leave and
was required to fulfill the responsibilities of a full-time
employee.  St. Margaret Mercy was not under any obligation to
reduce its expectations because Monroe previously took FMLA
leave.  If Monroe felt that he was incapable of fulfilling his
job duties, he could have notified St. Margaret Mercy that he
needed additional FMLA leave and worked a reduced schedule.
Because the FMLA does not demand accommodation for health condi-

18

tions, Monroe has failed to show that St. Margaret Mercy inter-
fered with his rights under the FMLA.

Monroe also complains that St. Margaret Mercy required him
to attend an off-site seminar.  However, he has not provided any
evidence to show why he should not have attended an off-site
seminar, nor does this violate the FMLA.  As discussed above, the
FMLA does not require accommodations for disabilities.  It is
strictly limited to providing leave in the event of a serious
injury.  An employee who returns from FMLA leave must be capable
of fulfilling the responsibilities of his position or that of an
equivalent position.

Because Monroe returned from FMLA leave, he was expected to
fulfill the requirements of his position, including attending the
off-site seminar.  If Monroe was so restricted that he could not
attend the off-site seminar, it was his responsibility to notify
St. Margaret Mercy that he required additional consideration.
Had he provided the requisite notification, Monroe may have been
entitled to FMLA leave in lieu of attending the seminar.  How-
ever, the record does not reflect that he gave such notice, and
St. Margaret Mercy was not restricted from holding Monroe to the
standards uniformly applied to all employees and requiring Monroe
to attend the seminar.  For these reasons, St. Margaret Mercy did

not interfere with Monroe's rights under the FMLA by requiring Monroe to attend the seminar.

Finally, Monroe complains that the terms of his employment were altered.  Specifically, Monroe complains that his leave was illusory because he remained responsible for completing the amount of work expected from a full time employee who did not take FMLA leave, resulting in a more burdensome work load.  "An employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment."  29 C.F.R. §825.214.  However an employee is "not entitled to restoration if he cannot perform the essential func- tions of the position or an equivalent position."  *Harrell*, 445 F.3d at 919.  The employer need not accommodate the employee's condition and reduce his work load.  *Harrell*, 445 F.3d at 919.

In *Lewis v. School District #70*, 523 F.3d 730, 743 (7th Cir. 2009), the court concluded that the jury could find that the plaintiff's FMLA leave was illusory because the defendant held her to the standard of a full time employee and demanded the same amount of work product.  Monroe argues that holding him to the requirements of a full time employee and demanding that he complete 100% of the January HAP reassessments similarly would amount to an illusory FMLA leave.  However, Monroe was on leave

20

only for the final four days of January and worked more than 80%
of the month.  Monroe completed only three of 63 of his HAP
reassessments for that month, less than five percent.  Even if
his workload was apportioned respective to the percent of time he
worked, he fell far below St. Margaret Mercy's reasonable expec-
tations and did not complete the requirements of his position.
St. Margaret Mercy represents that it expected Monroe to complete
90% of the HAP assessments.  Even though this is a greater
percentage than the amount of time he spent working and may have
created an illusory leave, Monroe fell far short of completing
80% of the HAP reassessments, the equivalent to the percentage of
time he was present in January.  Monroe's performance was signif-
icantly below any reasonable expectations. Monroe seeks an
exceptional accommodation — one that the FMLA does not provide.

Monroe has failed to show that a genuine issue of material
fact remains concerning whether St. Margaret Mercy interfered
with his rights under the FMLA.  St. Margaret Mercy acted prompt-
ly upon notice of Mornoe's condition, granted him FMLA leave
within the time permitted by the regulations, and allowed him to
attend physical therapy.  Monroe has not shown that the condi-
tions of his position were so altered as to constitute a change
in the conditions of employment, specifically because he failed
to meet any reasonable expectations.  The FMLA does not demand

21

accommodation for health conditions.  Rather, the employee is expected to return to work in his full capacity, with the expectations to be adjusted according to the time he was absent. Monroe's performance fell far below any reasonable expectations taking into account his absences.  Therefore, his interference claim fails.

Monroe also complains that St. Margaret Mercy retaliated against him for taking FMLA leave.  Monroe may proceed under the direct method of proof or by establishing that he was treated less favorably than a similarly situated employee.  To establish retaliation under the direct method of proof, Monroe must show that he engaged in a protected activity, suffered a materially adverse action, and that there was a causal connection between the two.  *Caskey,* 535 F.3d at 593.  It is undisputed that Monroe engaged in a protected activity by taking FMLA leave and was terminated.  To survive summary judgment, Monroe must create a triable issue of whether his termination had a discriminatory motivation.  Retaliation need not be the only reason for termination, but the plaintiff must show that it was a motivating factor in the employment decision.  *Lewis,* 523 F.3d at 741.  "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's

22

actions." **Lewis,** 523 F.3d at 742 (*quoting* **Culver v. Gorman &**

**Co.,** 416 F.3d 540, 545 (7th Cir. 2005)).

The plaintiff can show discriminatory intent under the

direct method of proof with direct or circumstantial evidence.

"Direct evidence is evidence which, if believed by the trier of

fact, will prove the particular fact in question without reliance

upon inference or presumption." **Nagle v. Village of Calumet**

**Park**, 554 F.3d 1106, 1114 (7th Cir. 2009).

> This evidence usually requires an admission
> from the decisionmaker about his discrimina-
> tory animus, which is rare indeed, but a
> plaintiff can also establish an inference of
> discrimination under the direct method by
> relying on circumstantial evidence such as:
>
> > (1) suspicious timing, ambiguous
> > oral or written statements, or
> > behavior toward or comments direct-
> > ed at other employees in the pro-
> > tected group;
> >
> > (2) evidence, whether or not rigor-
> > ously statistical, that similarly
> > situated employees outside the
> > protected class received systemati-
> > cally better treatment; and
> >
> > (3) evidence that the employee was
> > qualified for the job in question
> > but was passed over in favor of a
> > person outside the protected class
> > and the employer's reason is a
> > pretext for discrimination.
>
> **Nagle,** 554 F.3d at 1114

23

Circumstantial evidence allows the trier of fact to infer inten-
tional discrimination through a chain of inferences. *Lewis,* 523
F.3d at 742.

Monroe has not pointed to direct evidence that St. Margaret
Mercy retaliated against him for taking FMLA leave.  Instead,
Monroe relies on circumstantial evidence, including the timing of
his termination and the discipline he faced after returning from
FMLA leave.  Monroe's termination cited three reasons, including:
(1) he failed to complete nearly 300 progress notes, which
resulted in St. Margaret Mercy having to reimburse over $10,000
in Medicaid payments; (2) he appeared to be sleeping at work; and
(3) he failed to complete 60 out of his 63, 180-day HAP reassess-
ments in January 2008.  Monroe argues that these events were all
a pretext for FMLA retaliation.

While Monroe was on leave, Donna Ruebensam filled in for
him.  St. Margaret Mercy alleges that Ruebensam reported that
Monroe's patient files were missing progress notes.  At her
deposition, Ruebensam stated that she did not recall the progress
notes missing, and Monroe contests whether the reports in fact
were missing.  Ruebensam's report caused St. Margaret Mercy to
launch an investigation of every employee's files to ensure
compliance with Medicaid's requirements and to avoid fraud
charges. The investigation encompassed every employee and was not

aimed at Monroe.  Hurt and Hughes were responsible for auditing Monroe's patient files for missing progress notes.  They reported their findings that 299 progress notes were missing from Monroe's patient files to Martinez, who did not verify, oversee, or participate in the audit.  The audit also revealed that two other employees were not in 100% compliance, but they had left their employment with the hospital.  As a result of the audit, St. Margaret Mercy reimbursed Medicaid $10,000 for charges linked to files missing progress notes.

Monroe complains that St. Margaret Mercy's investigation lacked integrity because his supervisor, Martinez, did not verify, oversee, or participate in searching through Monroe's files for the missing progress notes.  Monroe alleges that Hurt and Hughes had an interest in finding missing progress notes because they were forced to do extra work during Monroe's absence.  However, Monroe's complaints are merely speculative. Beyond his unsupported allegations, Monroe has not given the court reason to believe the audit was biased or unfair.  St. Margaret Mercy relied not only on Ruebensam's report that the progress notes were missing but also on the findings of two additional employees who looked through not only Monroe's files, but every patient file.  St. Margaret Mercy relied on these findings and went so far as to reimburse Medicaid $10,000 for

charges associated with files missing progress notes.  Monroe
cannot expect the court to believe that St. Margaret Mercy went
so far as to reimburse Medicaid $10,000 in an effort to terminate
him for taking FMLA leave.

The only thing Monroe has to offer in rebuttal is his own
unsupported statement that the files were not missing progress
notes and that the investigation was biased.  However, Monroe's
unsupported allegations do not call into question the sincerity
of St. Margaret Mercy's conclusions.  *See* ***Hudson v. Wal-Mart
Stores, Inc.***, 412 F.3d 781, 786 (7th Cir. 2005) (explaining that
the defendant employer's reliance on statements of co-workers and
supervisors that was only contradicted by the plaintiff's own
account of the events did not call into question the sincerity of
the employer's decision to terminate the plaintiff).

St. Margaret Mercy also disciplined Monroe and cited as
reason for his termination that he did not complete 60 out of his
63, 180-day HAP reassessments in January 2008.  Monroe has
explained that the HAP reassessments were not late because
Indiana changed its program and altered the deadlines, rendering
the reassessments due in April, May, or June.  Regardless of the
change to the Indiana rules governing reassessments, it was St.
Margaret Mercy's policy to complete HAP reassessments within 180
days.  Monroe did not have 90% of his assessments done within 180

26

days and did not meet St. Margaret Mercy's expectations.  Although Monroe took FMLA leave, he remained responsible for completing the percentage of his work equivalent to the time he was present at work so not to make the FMLA leave illusory. Monroe fell far below this standard and did not meet St. Margaret Mercy's legitimate expectations.

Monroe additionally complains that many of these errors arose prior to his termination, rendering the untimely disciplinary actions suspicious.  Monroe always received excellent performance reviews, and his managers never complained of missing progress notes or untimely HAP reassessments until he returned from FMLA leave.  Specifically, Monroe explains that he received the highest marks on his 2006 and 2007 performance reviews, which encompass HAP reassessments, HAP documentation, and progress notes.  When Monroe returned from his first leave, he was warned about completing the reassessments on time.

The court does not find the timing of the events suspicious. While Monroe was on leave, Ruebensam took over his patient files and discovered that the progress notes were missing from some. Prior to Monroe's FMLA leave, St. Margaret Mercy did not audit or oversee the patient files to check for progress notes and would not have discovered they were missing but for Ruebensam's report. Fearing fraud charges, St. Margaret Mercy launched an audit of

every employee's patient files in response to Ruebensam's report.
The audit was not targeted solely at Monroe.  If Ruebensam had
not taken over Monroe's files, the absence of progress notes may
not have been discovered.  Therefore, the audit was not launched
because of Monroe's FMLA leave.  Rather, it was launched because
of information discovered because Monroe took FMLA leave, requir-
ing another employee to take over his files.

In addition, the HAP reassessments that Monroe failed to
complete were due in January according to St. Margaret Mercy's
policies.  Monroe previously may have completed the HAP reports
in a timely manner as reported in his reviews, but on this
occasion, the record reflects that he failed to comply with the
deadline.  Monroe could not have been punished for untimely
reports until the time to complete them had passed, which hap-
pened to be after his FMLA leave.  In any case, suspicious timing
alone does not create a triable issue of material fact.  *Kidwell*,
2012 WL 1848084 at *8.  Monroe must do more than proffer that his
termination followed his FMLA leave and was in violation of the
Act.  *Kidwell*, 2012 WL 1848084 at *8.

Finally, Monroe argues that he should not have been termi-
nated for sleeping on the job because it occurred during his
lunch break, should have constituted notice of his health prob-
lems, was uncharacteristic of Monroe, and was the result of his

28

injury.  As discussed above, this incident did not constitute
notice because Monroe was capable of providing St. Margaret Mercy
notice.  Despite this behavior being uncharacteristic of Monroe
and the result of his injury, the FMLA does not provide protec-
tion for employees who are not living up to their employer's
expectations.  If Monroe was in pain, he may have been entitled
to additional leave under the FMLA, but he did not request leave.
The FMLA is not a shield to avoid punishment for violating the
employer's policies.

   Monroe has not presented direct proof of retaliation.  His
claim, therefore, will be analyzed under the indirect burden-
shifting analysis.  To begin, the parties have agreed that Monroe
engaged in a statutorily protected activity by taking FMLA leave
and that he suffered an adverse employment action when he was
terminated.  The parties' agreement ends there.  It is disputed
whether Monroe was meeting his employer's legitimate expectations
or whether he was treated less favorably than a similarly situ-
ated employee.  *See Caskey*, 535 F.3d at 593.  Monroe has not
pointed to one similarly situated employee who was treated more
favorably.  The evidence unequivocally shows that every employee
who appeared to be sleeping on the job was terminated.  Monroe
attempts to distinguish himself, arguing that he was not sleep-
ing, the incident occurred during his lunch break, and he ap-

peared to be sleeping because he was in pain, unlike the employ-
ees who were previously terminated.

The St. Margaret Mercy handbook specifically states that an
employee will be terminated for sleeping or appearing to sleep
during working hours.  All other employees who appeared to be
sleeping were terminated.  Monroe's attempt to argue that he was
not asleep does not excuse his behavior or show that he was
engaged in a permissible activity.  Although Monroe was injured,
which perhaps distinguishes him from the other employees, it does
not absolve Monroe from pointing to a similarly situated employee
who was treated more favorably.  Monroe could have pointed to an
employee who was sick or injured that St. Margaret Mercy bent the
rules or made accommodations for, but he has not. Monroe also
could have identified an employee who was engaged in an impermis-
sible activity during a lunch break and was not terminated or
disciplined. Instead, Monroe has chosen not to point to one
similarly situated employee who was treated more favorably and
has not demonstrated to the court that he can carry this burden
at trial.

The record also reflects that Monroe was not meeting his
employer's legitimate expectations.  In addition to sleeping at
work, St. Margaret Mercy has shown that Monroe was not completing
his work.  His files were missing progress notes, and he com-

30

pleted only a small fraction of his 180 day HAP reassessments. Monroe's errors cost St. Margaret Mercy $10,000 because it had to reimburse Medicare.  Monroe has not submitted any evidence to suggest that his files were not missing progress notes or that he completed a substantial percentage of his 180 day HAP reassessments within the time expected by St. Margaret Mercy.  Rather, the record reflects that Monroe completed only a small fraction of the work expected.  Absent reference to a similarly situated individual who was treated more favorably and evidence that he was performing in accordance with St. Margaret Mercy's legitimate expectations, Monroe has failed to show that he could support a prima facie case for discrimination under the FMLA at trial and summary judgment must be entered against him on this issue.

Finally, Monroe sought relief under the Workers's Compensation Act for retaliatory discharge.  Under the Indiana Worker's Compensation Act, "[t]he rights and remedies granted to an employee . . . on account of personal injury . . . by accident shall excluded all other rights and remedies of such employee . . . on account of such injury . . . except for [remedies for compensating victims of violent crimes]." Ind. Code §22—3—2—6. The Indiana Worker's Compensation Act is the exclusive remedy for an employee subject to the Act, and it abolished all common law actions against an employer likewise subject to the Act. *Kottis*

31

*v. U.S. Steel Corp.*, 543 F.2d 22, 24 (7th Cir.1976) (*quoting*

*Hickman v. W. Heating & Air Conditioning Co.*, 207 F.Supp. 832,

833 (N.D. Ind. 1962)). *See also Sims v. U.S. Fid. & Guar. Co.*,

782 N.E.2d 345, 349—50 (Ind. 2003) (exclusivity provision bars a

court from hearing common law actions for the same injury that

the employee is entitled to receive worker's compensation bene-

fits). A claim qualifies under the Worker's Compensation Act if

it is a personal injury arising out of and in the course of

employment. *House v. D.P.D., Inc.*, 519 N.E.2d 1274, 1275 (Ind.

App. 1988). "An injury arises out of employment when there is a

causal relationship between the injury and the employment." *Evans*

*v. Yankeetown Dock Corp.*, 491 N.E.2d 969, 975 (Ind. 1986). "In

the course of the employment" refers to the time, place, and

circumstances under which the injury occurs. *Wine—Settergren v.*

*Lamey*, 716 N.E.2d 381, 390 (Ind. 1999).

In Indiana, employment is generally at-will.  However,

Indiana recognizes a cause of action for employees terminated in

retaliation for filing a worker's compensation claim.  *Hudson*,

412 F.3d at 785.  To establish a claim for retaliatory discharge,

the employee must establish a causal connection between his

termination and filing the workers' compensation claim by direct

or indirect evidence.  The termination must be the sole reason

for the employee's discharge. *Hudson*, 412 F.3d at 785.   If the

employee does not have direct evidence, he may point to the
proximity of the discharge to the termination or show that the
cited explanations for his discharge were a pretext.  Monroe "can
establish pretext by demonstrating that [St. Margaret Mercy's]
explanation for the firing was either dishonest or 'patently
inconsistent with the evidence before the court.'"  *Hudson*, 412
F.3d at 785 (*citing* ***Markley Enters., Inc. v. Grover***, 716 N.E.2d
559, 565 (Ind. App. 1999)).

Monroe argues that the cited reasons for his termination
were a pretext for St. Margaret Mercy's true motive for terminat-
ing his employment and that the close timing between filing his
workers' compensation claim and termination precludes summary
judgment.  St. Margaret Mercy offered three non-retaliatory
reasons for terminating Monroe's employment.  Monroe violated St.
Margaret Mercy's policy against sleeping or appearing to sleep on
the job, his patient files were missing 300 progress notes, and
he did not complete his 180 day HAP reassessments within the time
frame set forth by St. Margaret Mercy's policies.  "It is well-
established that an employee can be terminated for violations of
valid work rules that apply to all employees."  ***Pernice v. City
of Chicago***, 237 F.3d 783, 785 (7th Cir. 2001).  Monroe attempts
to distinguish his actions and present to the court that the
policies did not apply to him because of his injuries.  However,

33

Monroe has not pointed to any exceptions within St. Margaret Mercy's policies or the applicable law. Monroe was required to comply with St. Margaret Mercy's rules and expectations as they applied to all employees.  It is undisputed that Monroe at least was appearing to sleep at work and that St. Margaret Mercy enforced this rule uniformly against all employees.  Because Monroe was violating a uniformly enforced St. Margaret Mercy's policy, Monroe has failed to show that a question of fact remains pending concerning whether St Margaret Mercy's stated reason for terminating Monroe may be a pretext.

_____

Based on the foregoing, the Motion for Summary Judgment [DE 38] filed by the defendant, Sisters of Saint Francis Health Services, Inc., on January 13, 2012, is **GRANTED.**

ENTERED this 11th day of July, 2012


s/ ANDREW P. RODOVICH
United States Magistrate Judge